UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE POWELL, | Case No.:1:12-cv-01781-AWI-BAM (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| PAUL COPENHAVER, | [ECF No. 1] |
| Respondent. | |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition for writ of habeas corpus on October 31, 2012.

Respondent filed a response to the petition on April 5, 2013.  Petitioner did not file a traverse.

**I.**

**DISCUSSION**

**A.     Subject Matter Jurisdiction and Venue**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241.  Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of confinement.  Brown v. U.S., 610 F.2d 672, 677 (1980).  At the

1

time the petition was filed, Petitioner was incarcerated at the United States Penitentiary in Atwater, California, which is located within the jurisdiction of this Court. 28 U.S. § 2241(d); Hernandez v. Campbell, 204 F.3d 861, 864 (9th Cir.2000). Because Petitioner has raised challenges to his hearing before the United States Parole Commission, his claims are properly brought by way of § 2241.

**B.     Background**

On October 7, 1991, the Superior Court of the District of Columbia sentenced Petitioner to 20 years to life for murder I while armed; and to a concurrent sentence of 5 to 15 years for possession of a firearm during a crime of violence. Ex. A, Judgment. The offenses occurred on January 20, 1990. Ex. B, Sentence Computation Data. Petitioner became eligible for parole on August 8, 2010. Id.

The Commission conducted Petitioner's initial parole hearing on November 16, 2009. Ex. C, Hearing Summary. Pursuant to the 1987 Guidelines, the hearing examiner recommended parole be denied and a re-hearing scheduled in 36 months. Id. The Commission denied parole and scheduled a reconsideration hearing for November 2012. Ex. D, Notice of Action.

Petitioner received a reconsideration hearing on August 8, 2012. Ex. E, Hearing Summary. After his initial hearing, Petitioner committed five disciplinary infractions for phone abuse, and one institutional infraction for being insolent to a staff member. Id. The hearing examiner recommended Petitioner receive a parole date effective December 3, 2012. Id. The executive reviewer disagreed and recommended parole be denied and continued for rehearing in February 2014. Id. The Commission agreed and adopted the executive reviewer's recommendation. A Notice of Action, dated September 5, 2012, denied parole and continued the matter for rehearing in February 2014. Ex. F, Notice of Action.

In the instant petition, Petitioner claims the United States Parole Commission's ("Commission") September 5, 2012, decision denying him parole violated his due process rights because the D.C. Board 1987 Guidelines (1987 Guidelines) indicated that he should be granted parole. Petitioner also contends the pursuant to the D.C. Board of Parole 1991 Policy Guideline (1991 Policy Guideline) there is no evidence in the record to establish "ongoing criminal behavior" and his institutional record after November 16, 2009 does not support a finding that he engaged in "serious negative institutional behavior." Petitioner requests the court to order his parole granted as of August

8, 2012, or order a new parole hearing. Petitioner also contends the Commission conducted a second reconsideration hearing on September 5, 2012, outside of his presence in which parole was denied.

### C. Review of Petition

1. Background of Parole Law

In 1987, the District of Columbia Parole Board established point based guidelines to channel its exercise of discretion in deciding whether to award parole. These guidelines were in effect from 1987 to 1998. See, e.g., Ellis v. District of Columbia, 84 F.3d 1413, 1415-1417 (D. C. Cir. 1996). These guidelines provided the calculation of a "Total Point Score" based on the prisoner's Salient Factor Score and additional risk points. The Total Point Score reflected the prisoner's risk level. If the Total Point Score was 2 or less at the initial parole hearing, the prisoner would generally be granted parole. If the Total Point Score was 3 or more at the initial hearing, parole would typically be denied and the rehearing would be scheduled. At the rehearing, a score of 3 would generally indicate parole should be granted. Departures from the Total Point Score were allowed. Id.

On August 5, 2000, the D.C. Board of Parole was abolished, and the United States Parole Commission pursuant to the 1997 Revitalization Act was implemented. The Revitalization Act required the Parole Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also granted the Parole Commission ". . . exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons . . ." See D.C. Code § 24-1231(a)(1) and (c) (1999), recodified as D.C. Code § 24-131(a)(1) and (c) (2001).

In 2008, the United States District Court for the District of Columbia issued the decision in Sellmon v. Reilly, 551 F.Supp.2d 66 (D.D.C. 2008), which held that application of the amended and supplemented regulations (reflected in 28 C.F.R. § 2.80) to D.C. Code offenders who had committed their crimes before the transfer of authority to the Commission could violate the Ex Post Facto Clause of the Constitution. Thereafter, the Commission implemented a rule that application of the 1987 D.C. Board Guidelines applied to any offender who committed his crime between March 4, 1985 (the effective date of the "1987 Guidelines"), and August 4, 1998 (the last day the D.C. Board exercised parole release authority ("Sellmon Rule"). See 74 Fed. Reg. 34688 (July 17, 2009) (interim rule,

effective August 17, 2009) and 28 C.F.R. § 2.80(o) (November 13, 2009) (final rule). In an attempt to remedy an ex post facto violation against certain petitioners, the Commission sought to apply the regulations consistently so it decided to apply the D.C. regulations in all cases in which the prisoners committed their crimes during the relevant time period. Sellmon, 551 F.Supp.2d at 84 (citing Garner v. Jones, 529 U.S. 244 (2000).

In 1991, the D.C. Board published a "policy guideline" (not a codified regulation) which contained further guidance on the definitions of terms found in the 1987 guidelines. This policy remained in effect from December 16, 1991 (the date it was issued), until October 23, 1995, when the Board issued new policy guidelines. Because Petitioner did not commit his offense before this time period, the 1991 policy guideline was not applied to his case.

2. Parole Hearings

As previously stated, Petitioner's first parole hearing took place on November 16, 2009. Ex. C, Hearing Summary. At this hearing, the Commission applied the D.C. Board 1987 Guidelines. Id. The hearing examiner determined that Petitioner committed three violations while incarcerated – assaulting a correctional officer without serious injury; possessing a dangerous toll (cell phone); and unauthorized possession of heroin. Ex. C, Hearing Summary. Based on the 1987 Guidelines, Petitioner's total grid score was calculated as a 3, which indicated that parole should be denied, and a re-hearing should take place in 12 months. Id. The hearing examiner recommended that the rehearing be conducted in 36 months based on Petitioner's ongoing criminal behavior, repetitive criminal behavior, and his serious negative institutional behavior. Id. Parole was denied and a rehearing was scheduled for November 2012-36 months thereafter. Ex. D, Notice of Action. In rendering its decision, the Commission specifically noted the following:

> The Commission has applied the D.C. Board of Parole's 1987 guidelines to the initial parole decision in your case. You have a total point score of 3 under the guidelines for D.C. Code offenders. The guidelines indicate that parole should not be granted at this time. After review of all relevant factors and information presented, a departure from the guidelines at this consideration is not found warranted. The guidelines for the time to rehearing indicate that your next hearing should be scheduled within 12 months. A departure from these guidelines is found warranted because the Commission finds that at this time there is a reasonable probability that you would not obey the law if released, and that your release would endanger the public. You are a more serious parole risk than shown by your rehearing guidelines

>because of your ongoing and repetitive institutional behavior.  Specifically, in May, 1989 you were arrested and subsequently convicted of Carrying a Dangerous Weapon (gun) and you were committed to the DHS (Cedar Knoll) for a period of 18 months.  On 1/20/1990, while on a temporary pass for a home visit, you committed the instant offense of Murder in both your prior conviction and your offense of conviction, you were found to be in Possession of a Firearm and, in the instant offense of conviction, you used the firearm to take the life of another human being.  This demonstrates ongoing repetitive and/or escalating criminal behavior that makes you a more serious risk.  When considering this, along with your institutional adjustment, that includes an Assault on a Correctional Officer, Possession of Drugs, and Possession of Major Contraband (cell phone), makes you an unacceptable risk to public safety.

Id.

A reconsideration hearing was held on August 8, 2012.  Ex. E, Hearing Summary.  After his initial hearing in 2009, Petitioner committed five disciplinary infractions for phone abuse, and one institutional infraction for being insolent to a staff member.  Id.  The 1987 Guidelines were applied and Petitioner's total grid score was calculated as a 3, indicating parole should ordinarily be granted.  Id.  The hearing examiner recommended Petitioner receive a parole date effective of December 3, 2012.  Id.  Upon further review, the executive reviewer disagreed with the hearing examiner and recommended that parole be denied and the case be continued for a rehearing in February 2014-18 months thereafter.  Id.  The Commission adopted the executive reviewer's recommendation and the rehearing was continued to February 2014.  Ex. F, Notice of Action.  In rendering its decision, the Commission stated the following:

>You have a total point score of 3 under the 1987 Board Guidelines for D.C. Code offenders.  The guidelines indicate that parole should be granted at this time.  After review of all relevant factors and information presented, a departure from these guidelines is found warranted because the Commission finds that at this time there is a reasonable probability that you would not obey the law if released, and that your release would endanger the public.  You are a more serious parole risk than shown by your point score because of your ongoing and repetitive violence was outlined in the Notice of Action dated February 26, 2010.  In addition, you had sustained serious negative institutional behavior prior to your last hearing.  Since that time, you have incurred six additional infractions that resulted in a finding of guilt and sanction by the Disciplinary Hearing Officer.  The Commission finds that your continued inability to comply with the rules of the institutions when considered with your history of violence and negative institutional behavior indicates that you remain a risk to the community at this time.  It is recommended that you maintain a work detail, continue to program to address your instant offense behavior, and remain incident report free by the next hearing to reduce your risk.

>The guidelines for the time to rehearing indicate that your next hearing should be scheduled within **[**18**]** months. A departure from these guidelines is found warranted for the same reasons stated above for denying parole.

Id.

3. <u>Alleged Due Process Violation</u>

Petitioner contends the September 5, 2012 decision denying him release on parole violated his due process rights because the 1987 Guidelines indicated he should ordinarily be granted release.

The Commission properly applied the 1987 Guidelines to Petitioner's hearing and through the exercise of its discretion under the guidelines and the D.C. parole statute, found Petitioner was not suitable for release. The 1987 Guidelines, authorizes the Commission in "unusual circumstances" to depart from the guidelines in which cases it must "specify in writing [the] factors which it used to depart from the strict application of the provisions" of the guidelines. Ex. G, District of Columbia Municipal Regulation. In this instance, the Commission found "that there is a reasonable probability that [Petitioner] will live and remain at liberty without violating the law, [and] that his release is not incompatible with the welfare of society." D.C. Code § 404(a). The Commission simply departed from the guidelines based on its discretion and informed Petitioner of the specific reasons for the departure. There is no showing of a due process violation as the Commission complied with the 1987 Guidelines.

Petitioner also contends that the Commission violated his due process rights by inappropriately defining "ongoing criminal behavior" and "serious negative institutional behavior" under the D.C. Board of Parole's 1991 Policy Guideline. Petitioner claims there is no evidence in the record to demonstrate "ongoing criminal behavior" after his arrest, and his institutional record after the November 16, 2009, parole hearing does not support a finding that he committed "serious negative institutional behavior." Petitioner's claim is unfounded. The 1991 D.C. Board of Parole's Policy Guidelines went into effect on December 16, 1991, and remained valid until the Board issued a new policy guideline which superseded it, on October 23, 1995. Because Petitioner did not commit his offenses before December 16, 1991, the 1991 Policy Guideline did not apply to his case. Thus, the Commission did not rely upon the definitions for "ongoing criminal behavior" and "serious negative

institutional behavior" as supplied by the 1991 Policy Guideline. Therefore, there is no merit to Petitioner's claim as the 1991 Policy Guidelines were not applied to him.

### 4. Merits Decision to Deny Release on Parole

Petitioner contends this Court should order his release on parole or order a new hearing because the hearing examiner recommended parole at his August 8, 2012, reconsideration hearing. Petitioner is in essence requesting that this Court review the merits of the Commission's 2012 decision and grant his release. However, this Court's review is limited to whether the agency complied with the applicable statute or rule, and may not extend to the discretionary decision itself. See Garcia v. Neagle, 660 F.2d 983, 987 (4th Cir. 1981); Smith v. Quick, 680 A.2d 396, 398 (D.C. 1996) (declining to review the merits of a parole denial that overrode a favorable grid score based upon the prisoner's rape, burglary, and assault background). The 2012 Notice of Action specifically indicated parole was denied based on "public safety" which was a legitimate reason to depart from the guidelines under D.C. law. See D.C. Code § 23-404(a); Hannah v. Bureau of Prisons, No. 2:02CV585, 2005 WL 1162519, at *3 (E.D. Va. Apr. 2, 2005) (holding a prisoner's "risk to the community is a relevant factor to be considered at each parole hearing, and necessarily includes consideration of the underlying offense"); Smith v. Quick, 680 A.2d at 398 (written explanation indicating factors favoring incarceration, including prior assault criminal behavior, is sufficient explanation); Duckett v. U.S. Parole Commission, 795 F.Supp. 133, 137-138 (M.D. Pa. 1992) (upholding Commission's departure from the guidelines based upon prisoner's prior record and misconduct which supported the finding that the prisoner posed a serious risk to public safety). Pursuant to the Commission's statutory standard Petitioner was denied parole. D.C. Code § 24-131(c) ("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia . . .").[1]

---

[1] The statutory standard for parole release is:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

1   There is no authority for this Court to further review the merits determination by the
2   Commission to deny parole.  See, e.g., Stevens v. Quick, 678 A.2d 28, 31 (D.C. App. 1996) (Court
3   does not review the merits of decision by U.S. Parole Commission, under District's parole
4   regulations); Bennett v. Ridley, 633 A.2d 824, 826 (D.C. App. 1993) ("On a petition for writ of habeas
5   corpus, this court does not review the merits of the [D.C. Parole] Board's decision [to revoke parole],
6   but only whether the plaintiff has been deprived of his legal rights by the manner in which the
7   revocation hearing was conducted, in order to determine whether there has been an abuse of
8   discretion."); Smith v. Quick, 680 A.2d at 398 ("We do not review the merits of the Board's decision
9   in denying parole, and are limited to a review of the procedures used by the Board in reaching its
10  decision."); Jones v. Braxton, 647 A.2d 1116 (D.C. App. 1994) (merits of decision denying parole not
11  judicially reviewable); Brown-Bey v. Hyman, 649 A.2d 8 (D.C. App. 1994) (length of set-off to
12  rehearing is "merits" decision, and is not judicially reviewable).  Thus, this Court cannot review the
13  Commission's merits decision because it is granted complete discretion to determine when a prisoner
14  is suitable for release.

   5.   Parole Reconsideration Hearing Conducted Outside of Petitioner's Presence

16  Petitioner contends that his second parole reconsideration hearing on September 5, 2012, was
17  conducted outside of his presence.  However, only one parole reconsideration hearing was held for
18  Petitioner on August 8, 2012, and Petitioner was present.  Ex. E, Hearing Summary.  On September 5,
19  2012, it was just the notice of action in which the Commission upheld the recommendation by the
20  hearing examiner to deny parole and rehearing was continued until February 2014.  Ex. F, Notice of
21  Action.  The Commission did not conduct another hearing on September 5, 2012, rather, the decision
22  to deny parole was made on this date.  The Notice of Action clearly indicates the decision was made
23  based on the hearing conducted in Petitioner's presence on August 8, 2012.  Id.  Accordingly, there is
24  no merit to this claim.
25  ///
26  ///

---

D.C. Code § 24-404(a) (formerly § 204(a)).

8

## II.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 22, 2013**                          /s/ *Barbara A. McAuliffe*
                                                                    UNITED STATES MAGISTRATE JUDGE